# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

Argued November 7, 2023          Decided February 23, 2024

No. 22-7103

PABLO ABREU,
APPELLANT

v.

HOWARD UNIVERSITY,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cv-00397)

---

*Stewart Lee Karlin*, pro hac vice, argued the cause for appellant. On the briefs was *Pablo Abreu*, pro se.

*Daniel I. Prywes* argued the cause for appellee. With him on the brief was *Rebecca K. Connolly*.

Before: WILKINS and KATSAS, *Circuit Judges*, and ROGERS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* ROGERS.

ROGERS, *Senior Circuit Judge*: Pablo Abreu challenges his expulsion as a student at the Howard University College of Medicine. Reviving allegations in his complaint, he contends that the University violated, in addition to contractual rights, his civil rights under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182(a) & (b)(2)(A)(ii), and the Rehabilitation Act of 1972 ("Rehabilitation Act"), 29 U.S.C. § 794(a) & (b)(2)(A), by refusing him an additional opportunity to take the first of three examinations required for licensure in the United States in view of evidence of his test-taking-anxiety disability. The district court dismissed the amended complaint, ruling he failed to state a contract claim and, upon applying a one-year statute of limitations where the statutes were silent, the statutory claims were time-barred. Mem. Op. (June 17, 2022) 3–6. Our subsequent decision in *Stafford v. George Washington University,* 56 F.4th 50, 53 (D.C. Cir. 2022), held that a three-year statute of limitations applied to civil rights claims under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, which also did not include a statute of limitations, and emphasized the importance of uniform limitations periods in this context. Abreu's statutory claims are civil rights claims. Accordingly, the court reverses the dismissal of Abreu's ADA and Rehabilitation Act claims as untimely and remands those claims to the district court for further proceedings; otherwise, the court affirms the dismissal of his complaint.

## I.

Abreu completed the second year of the University's four-year medical program on April 19, 2017. Under its Policies and Procedures, medical students are required to pass the first of three examinations, required for licensure by the state medical board of every U.S. state and the District of Columbia, in three attempts or fewer before starting a third year of medical

school. The "[a]bsolute [d]eadline" for passing the first exam is "the second Wednesday in July of the year following the one in which [the student] successfully completed the sophomore year," and failure to meet that deadline results in dismissal. How. Univ. Coll. of Medicine's Policies & Procedures Manual § XVII(A)(3)(b) (2018–2019 ed.). Abreu's deadline was July 11, 2018.

According to the complaint, while preparing for the first examination, Abreu reported to the University administration that he was struggling with practice examinations. Am. Compl. ¶¶ 14-15. He was granted additional time to prepare. *Id.* ¶ 16. When he failed to pass the examination on September 20, 2017, the University approved Abreu's request for a leave of absence to attend an "intensive preparatory program." *Id.* ¶ 17. Abreu attended the course, at his own expense, from January to August of 2018. *Id.* ¶ 19. During that period a psychologist screened Abreu positive for "Specific Phobia: Situational Type" relating to severe test-taking anxiety, and Attention Deficit Hyperactivity Disorder ("ADHD"), *id.* ¶ 20, and at Abreu's request reported these diagnoses on June 11, 2018 to the University, *id.* ¶ 22. He was granted another extension of time to take the first examination. *Id.* ¶¶ 22–23.

When Abreu again failed to pass the first examination by the July 11 deadline, the University reviewed his academic record and Abreu requested "one last opportunity" to pass the first examination. Abreu Ltr. (Sept. 19, 2018). He was granted a second leave of absence and an extension of the examination deadline to June 1, 2019. University Ltr. (Nov. 9, 2018). On June 10, 2019, the University claimed to have informed him that he was out of compliance with the June 1 deadline; Abreu denied receiving prior notice of the deadline. Am. Compl. ¶¶ 32–33. Abreu failed the first examination for a third time on June 22, 2019. *Id.* ¶ 33. He was expelled from the medical

school program on August 27, 2019. University Ltr. (Aug. 27, 2019).

Abreu sued the University on February 12, 2021, alleging a failure to accommodate under the ADA and Rehabilitation Act, based on the denial of his requests for additional attempts to take the first examination. Compl. ¶¶ 29–38. He also alleged that the University breached its Policies and Procedures by "dismiss[ing] [him] before the . . . stated cutoff date for completion" of the examination. *Id.* ¶ 28. The district court ruled that the ADA and Rehabilitation Act claims were time barred. Because neither Act included a statute of limitations, the district court, looking to *Jaiyeola* v. *District of Columbia,* 40 A.3d 356 (D.C. 2012), ruled that a one-year statute of limitations applied and dismissed the ADA and Rehabilitation Act claims as time barred. Mem. Op. (Nov. 2, 2021) 7–8. The district court also ruled that he failed to state a claim for breach of contract and dismissed the complaint with leave to amend. *Id.* at 9–10. In an amended complaint, Abreu added a claim for breach of an implied contractual right to a reasonable accommodation. Am. Compl. ¶¶ 41–49. The University moved to dismiss or in the alternative for summary judgment. The district court dismissed the amended complaint, and Abreu appeals.

## II.

The ADA and the Rehabilitation Act do not contain a statute of limitations. *Long v. Howard Univ.*, 512 F. Supp. 2d 1, 11 (D.D.C. 2007), *aff'd*, 550 F.3d 21 (D.C. Cir. 2008); *Alexander v. Washington Metro. Area Transit Auth.*, 826 F.3d 544, 551 (D.C. Cir. 2016). Where Congress is silent, the court "do[es] not ordinarily assume that Congress intended that there be no time limit on actions at all." *DelCostello v. Teamsters*, 462 U.S. 151, 158 (1983). The "settled practice has been to

adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so." *Wilson v. Garcia*, 471 U.S. 261, 266–67 (1985).

In finding the most appropriate or analogous D.C. statute of limitations, the district court looked to *Jaiyeola v. District of Columbia,* 40 A.3d 356, 368 (D.C. 2012). There the D.C. Court of Appeals applied the one-year statute of limitations from the D.C. Human Rights Act, D.C. CODE § 2-1403.16, to federal Rehabilitation Act claims. Federal district courts in this circuit applied the same one-year statute of limitations to ADA claims. *See, e.g., Arthur v. D.C. Hous. Auth.*, No. 18-cv-2037, 2020 WL 1821111, at \*6–7 (D.D.C. Apr. 11, 2020); *Brown v. District of Columbia*, No. 16-cv-0947, 2019 WL 4345710, at \*5 (D.D.C. Sept. 12, 2019).

Subsequent to the district court's judgment in Abreu's case, this court in *Stafford v. George Washington University,* 56 F.4th 50, 52 (D.C. Cir. 2022), applied the three-year statute of limitations for personal injury actions under D.C. law, D.C. CODE § 12-301(8), to a Title VI discrimination claim. It explained that "selecting the appropriate statute of limitations in a federal civil rights action presents a question of federal, not state, law." *Stafford,* 56 F.4th at 54. It concluded that *Jaiyeola* "conflicts with *Wilson [v. Garcia*, 471 U.S. 261 (1985)] and *Goodman [v. Lukens Steel Co.*, 482 U.S. 656 (1987)]." *Id.* For "a personal injury tort is the only single analogue that could cover such diverse causes of action and accord civil rights statutes 'a sweep as broad as [their] language.'" *Id.* (quoting *Wilson*, 471 U.S. at 272 (alteration in original)). Applying the statute of limitations for personal injury claims "vindicate[s] the federal interests underlying civil rights laws" by "select[ing] a statutory period that applies to a large number of civil claims," which minimizes the potential for discrimination in state law against federal claims. *Id.* (citing *Wilson*, 471 U.S.

at 279). Because "discrimination is 'a fundamental injury to the individual rights of a person,' [it is] a quintessential personal injury." *Id.* (quoting *Goodman*, 482 U.S. at 661). The court emphasized the importance of a uniform statute of limitations for civil rights claims: Uniformity "avoid[s] 'bre[eding] chaos and uncertainty'" because the same statute of limitations can be applied consistently across federal civil rights claims. *Id.* at 55 (quoting *Owens v. Okure*, 488 U.S. 235, 243 (1989) (second alteration in original)).

The University would distinguish *Stafford* because the court was addressing Title VI rather than the ADA or Rehabilitation Act. True, but this court's reasoning in *Stafford* applies to "civil rights claims" involving "discrimination." 56 F.4th at 54. Abreu's ADA and Rehabilitation Act claims are civil rights claims alleging discrimination based on disability. Am. Compl. ¶¶ 52, 56. *See* 42 U.S.C. § 12182(b)(2)(A)(ii); 29 U.S.C. § 794(a) & (b)(2)(A). Applying the statute of limitations for personal injury to ADA and Rehabilitation Act claims serves "the need for certainty and uniformity" emphasized in *Stafford,* 56 F.4th at 55.

Upon applying the three-year statute of limitations, Abreu's ADA and Rehabilitation Act claims are not time barred. He was expelled from the medical school on August 27, 2019, and filed suit on February 12, 2021. So the court need not reach Abreu's related contention that the four-year default statute of limitations under 28 U.S.C. § 1658, for actions arising under federal statutes lacking a statute of limitations and that were enacted after December 1, 1990, applies here. The court also does not reach the question whether tolling of statute of limitations for cases filed in the D.C. Superior Court during the COVID-19 pandemic would apply to claims filed in the federal court.

Alternatively, the University maintains that even if the three-year statute of limitations applies, the district court's dismissal of Abreu's ADA and Rehabilitation Act claims should be upheld based on the failure to state a claim. Specifically, in its view, the accommodations sought were neither "reasonable" nor "required, because they sought a fundamental modification of the University's academic program and standards." Appellee's Br. at 31. The district court did not reach that question, so this court remands for the district court to address it in the first instance. *See*, *e.g.*, *Liberty Prop. Tr. v. Rep. Prop. Corp.*, 577 F.3d 335, 341 (D.C. Cir. 2009).

The University also maintains that Abreu did not adequately allege that he was a "qualified individual" under the ADA and Rehabilitation Act. Appellee's Br. at 35–36. This argument was not raised in the district court and it is forfeited. *Singleton v. Wulff*, 428 U.S. 106, 121 (1976); *Simon v. Republic of Hungary*, 77 F.4th 1077, 1108 (D.C. Cir. 2023).

**III.**

Even assuming for the purpose of this appeal that the University's Policies and Procedures Manual is a contract, Abreu impermissibly "tries to recast his ADA and Rehabilitation Act claims as contract claims . . . to act in good faith." Mem. Op. (June 17, 2022) 5; Appellant's Br. at 28. Mutuality of legal obligations is lacking here. Under D.C. law, a party must be obligated by the contract to do something not otherwise required. *Eastbanc, Inc. v. Georgetown Park Assocs. II, L.P.*, 940 A.2d 996, 1003 (D.C. 2008). The mandates in the ADA and Rehabilitation Act to grant reasonable accommodations bind the University in any event. Abreu raises no obligation beyond the laws with which the University is obligated to comply to demonstrate the requisite

mutuality of legal obligation under D.C. law. *See* Appellant's Br. at 30–31.

For the first time on appeal, Abreu relies on provisions of the Policies and Procedures Manual regarding the University's statutory obligations under the ADA and Rehabilitation Act. *See* Appellant's Br. at 30–31 (citing 2015–2016 First Year Handbook-Student Handbook-Policy and Procedure Handbook at 20–21; Manual § IX(A), (C) & (D)). Taken as Abreu presents them, these excerpts do no more than outline the University's commitment to follow existing law: "In compliance with the law (Section 504, Rehabilitation Act and the American[s] with Disabilities Act, 'ADA'), [the] University is committed to providing its disabled students with reasonable accommodations." Appellant's Br. at 30 (quoting 2015–2016 First Year Handbook-Student Handbook-Policy and Procedure Handbook at 20–21). Abreu's citations, even assuming his belated reliance on them does not bar his claim on appeal, do not cure the mutuality-of-obligation defect of Abreu's contractual claim.

The district court also properly dismissed the portion of Abreu's breach-of-contract claim concerning the date of his dismissal. The Manual required Abreu to pass the first of three examinations for licensure by July 11, 2018. Manual § XVII(A)(3)(b). Abreu received an extension until June 1, 2019, but still had not passed the examination when the University expelled him from the medical school on August 27, 2019. The district court correctly found that Abreu was not expelled prematurely under the Manual and consequently failed to state a claim for breach of contract.

Accordingly, the court affirms the dismissal of Abreu's contractual claims, reverses the dismissal of his ADA and Rehabilitation Act claims as barred by a one-year statute of

limitations, and remands his statutory claims to the district court for further proceedings.